**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUDOU B. JANNEH,**

                         **Plaintiff,**

**-against-**                                                    **3:07-CV-79**

**REGAL ENTERTAINMENT GROUP,**

                         **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

## I.      INTRODUCTION

          Plaintiff Doudou Janneh ("Janneh" of "Plaintiff") commenced this action *pro se* alleging various discrimination claims against his former employer Regal Entertainment Group.  See Complaint [dkt # 1].   Previously, this Court dismissed a number of Plaintiff's claims, leaving Plaintiff's Title VII and ADEA discriminatory suspension and failure to promote claims, and Plaintiff's Section 1981 discriminatory discharge claim.  See Dec. & Ord [dkt. # 36].[1]  Presently before the Court are: (1) Defendant's motion for summary judgment, see Def. Mot. [dkt. # 58]; (2) Plaintiff's cross-motion for summary judgment, see Pl.  Mot. [dkt. # 67];  and (3) Plaintiff's renewed motion for appointment of counsel. [dkt. #

_____

          [1]Familiarity with this Decision and Order, reported at Jennah v. Regal Entertainment Group,  2007 WL 2292981 (N.D.N.Y. Aug.  6, 2007), is presumed.

66].  For the reasons that follow, Defendant's motion is granted and Plaintiff's motions are

denied.

## II.        STANDARD OF REVIEW

Janneh is no stranger to employment discrimination actions, having been a

plaintiff in at least ten prior employment discrimination cases in this District, the majority of

which he has proceeded in *pro se*.   See Janneh v.  Manpower Inc. of N.Y., 3:01-CV-1178

(N.D.N.Y.)(09/26/03 Dec. & Ord. [dkt. # 63]), aff'd 101 Fed. Appx. 368, 2004 WL 1406308

(2d Cir.  2004)(unpublished Summary Order), mot. to file out-of-time cert. pet. denied, 544

U.S. 972, 125 S. Ct. 1829 (Mem), 161 L. Ed.2d 722 (2005). The Court will apply the well

settled standard for summary judgment, including application of this Court's Local Rules,

which has been set forth in detail in decisions in several of Janneh's prior cases. See e.g.

Manpower, 09/26/03 Dec. & Ord. pp.  4-10; id., p.  3, n.  2;[2] Janneh v. Endvest, Inc., 01-

CV-0144 (N.D.N.Y.)(07/23/02 Dec. & Ord. [dkt. # 80] pp. 4-8), aff'd, 64 Fed. Appx. 814,

---

[2]In footnote 2 of the Manpower Inc. of N.Y. Decision and Order, the Court wrote:

It should be noted that the standard for summary judgment that is set out in the text is
virtually identical, in substance, to the standard set out in the prior summary judgment
Decision and Order in Janneh v. IBM, 3:01-CV-145, dkt # 59 . . ., *and* as was set out in the
July 23, 2002 Decision and Order in Janneh v. Endvest, Inc., 01-CV-0144, a prior
employment discrimination case brought by Plaintiff.  It should also be noted that in Janneh
v. Endvest, Inc., 01-CV-0144, this Court resolved many facts in defendants' favor because
there was no proper opposition in accordance with the Local Rules, discussed in the text
*infra*, and granted summary judgment to defendants on all claims.  The Second Circuit Court
of Appeals affirmed the grant of summary judgment, stating repeatedly that summary
judgment was proper on the various claims because the plaintiff had failed to present any
evidence in support of his factual assertions. See Summary Order, Janneh v. Endvest, Inc.,
02-7926 (2d Cir. 2003).

This Decision and Order was served upon Plaintiff as evidenced by his appeal therefrom.  See Janneh v.
Manpower Inc. of N.Y., 101 Fed. Appx. 368, 2004 WL 1406308 (2d Cir.  2004)("We have considered all of
plaintiff's arguments and have found each of them to be without merit. We affirm for substantially the reasons
set forth in the District Court's Decision and Order dated September 26, 2003.").  The Court's Decision and
Order in Janneh v.  Manpower Inc. of N.Y. is also available through PACER.

2003 WL 21025162 (2d Cir. 2003)(unpublished Summary Order), <u>cert. denied</u>, 546 U.S. 844, 126 S. Ct. 369 (Mem), 163 L. Ed.2d 108 (2005).

## III.   BACKGROUND

Unless indicated otherwise, the following facts are undisputed for purposes of the pending motions.[3]

### a.   **Plaintiff's Work History**

Janneh began working for Hoyts Cinemas, the predecessor to Regal Cinemas

---

[3] Janneh was served with Regal's 164-paragraph Local Rule 7.1(a)(3) "Statement of Material Facts Not in Dispute" ("Def. LR 7.1 Stat."). Dkt. # 58-41; dkt. # 59 (Aff. of Serv.).

In response, and apparently in support of his own motion for summary judgment, Janneh filed a "Statement of Material Facts Not in Dispute." Dkt. # 67-4. The document consists of one (1) complete sentence ("On November 8, 2004, the plaintiff filed a verified Charge/Complaint of Employment Discrimination with the New York State Division of Human Rights and the EEOC."); several incomplete sentences or phrases which do not admit or deny the allegations contained in Defendant's L.R. Statement, which do not contain citations to the record, and most of which do not do not have a paragraph number; and a phrase at the end of the document stating simply: "See Attached Exhibits." <u>Id.</u>

Janneh's statement fails to comply with the Local Rules which Janneh has repeatedly been advised about, <u>see e.g.</u> fn. 3, <i>supra</i>; <u>Manpower</u> 09/26/03 Dec. & Ord. pp. 4-10; <u>Endvest</u>, 07/23/02 Dec. & Ord. pp. 4-8. 01-CV-0144 (N.D.N.Y.), and Janneh was served with a copy of the District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion." <u>See</u> dkt. # 58-44 (Notice); dkt.# 59 (Aff. Serv.). The Court declines to search the record for evidence of material questions of fact. <u>See Amnesty America v. Town of West Hartford</u>, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that F<small>ED</small>. R. C<small>IV</small>. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted); <u>Monahan v. New York City Dep't of Corrections</u>, 214 F.3d 275, 291 (2d Cir. 2000)(The Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted).

Therefore, the properly supported facts contained in Regal's Local Rule 7.1 Statement are accepted as true for purposes of the pending motions. <u>See</u> N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."); <u>N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); <u>White v. Verizon Communications, Inc.</u>, 2008 WL 5382329, at * 3 (N.D.N.Y. Dec. 17, 2008)("[W]here a plaintiff has failed to properly respond to a defendant's statement of material facts, contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record.");<u>Govan v. Campbell</u>, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) ("In this case, the plaintiff did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the properly supported facts contained in the defendants' 7.1 statement.").

("Regal"), on October 22, 1999.  Janneh was hired by Eric Larkin, Hoyts Cinemas'

Binghamton, N.Y. theater general manager.  Plaintiff's position was as a floor staff

employee.  His duties included taking tickets, assisting customers, cleaning the theater,

and working in the concession stands.  Janneh worked about three 4-hour shifts per week.

In March 2003, Hoyts Cinemas was purchased by Regal.  Regal continued

operation of many of Hoyts Cinemas' theaters, including the theater in Binghamton.  Once

Regal took over Hoyts Cinemas, the former Hoyts Cinemas employees became Regal

employees and remained in their same positions.  For instance, Eric Larkin remained as

the Binghamton theater manger and Plaintiff remained as a member of the floor staff in

Binghamton.  Janneh's hours, pay and job duties remained the same after Regal took over

operations of the Binghamton theater.  Regal also determined to deem all projectionists

and all employees who had supervisory responsibilities with Hoyts Cinemas as "assistant

managers" with Regal.  Janneh was not deemed an assistant manger because he was not

a projectionist and did not have supervisory responsibilities when Regal purchased Hoyts

Cinemas.

As a Regal employee, Janneh received the Regal Staff Orientation Manual

("Handbook").  This contained Regal's employment policies. The attendance policy

requires an employee who is going to be absent from a scheduled shift to "call in" prior to

the absence.  The policy also provides that any employee who is absent for two or more

shifts without "calling in" is deemed to have voluntarily resigned.

The personal conduct policy proscribes verbal or physical altercations and

horseplay among employees. This policy provides for the immediate suspension of an

employee during an investigation into any allegation concerning a physical or verbal

4

altercation.

The Handbook also describes Regal's "four-step disciplinary policy."  The four steps in this policy consist of verbal counseling (step one), written counseling (step two), final written counseling (step three), and termination (step four).  Although progressive in nature, the policy specifically provides that the level of discipline used (*i.e.* the step used) will be determined by the nature of the infraction and "at the discretion of management where it is believed that such use will be in the best interest of the Company . . . ."

Regal's promotion policy provides that, whenever possible, vacancies will be filled from within Regal.  However, the policy also provides that the most qualified applicant will be hired for every position.

Janneh signed an acknowledgment that he had reviewed the Handbook and that he agreed to abide by its policies.  Further, a copy of the Handbook was kept in the employee break room and was available to employees at all times.

### b.  Disciplinary History

#### 1.    Customer Complaint

In March 2004, a customer filed a complaint alleging that, while the customer was buying a ticket, Janneh called the customer a "f * * king Jew."  Regal investigated and took statements from both the customer and Janneh.  Janneh denied the customer's accusation.  Because there were no witnesses to the event, Regal closed the matter as "non-determinative."  Janneh was not disciplined or suspended as a result of the investigation, and he worked his regular hours and received his regular pay during and after the investigation.

## 2.      Co-worker Complaint

On October 17, 2004,  a sixteen-year-old female co-worker, Molly McGouff, reported that Janneh had harassed her at work by forcefully pulling the hood on her sweatshirt and, when she told him to stop, by punching or pushing her in the shoulder causing her to stumble.  McGouff was very upset by the incident.

Theater Manager Larkin conducted a preliminary investigation and obtained written statements from McGouff and co-employees Raphaella Richardson, Kristy Webb, Jordon Schmidt, Emily Lukasik, and Michael Kaminsky.  These witnesses asserted that, as the employees were punching out by swiping their employee cards through an electronic reading device, Janneh was having difficultly with his card.  Richardson and McGouff told Janneh to swipe his card slower.  Janneh appeared to become upset and mumbled something that the others did not understand.  McGouff then put on her sweatshirt and started to walk away.  Janneh pulled McGouff's hood with enough force to stop McGouff and pull her backward.  McGouff became angry and told Janneh not to touch her.  Janneh then pushed or punched McGouff in the shoulder with sufficient force to cause McGouff to stumble.  Richardson then yelled at Janneh and told him not to touch McGouff.[4]  The group of employees then got on the elevator to leave but, when Janneh also got on the elevator, McGouff and Richardson got off and took the stairs.  On the elevator, Janneh said something about the incident and Schmidt told him to "shut up." Janneh than raised his fist and made a slow punching motion, stopping his fist in front of Schmidt's face.  Janneh said something to the effect of: "When I do that you fall down and you're dead."

---

[4]Richardson described it as a "heated exchange of words" with Janneh.

6

McGouff and Lukasik also reported that, for approximately three weeks before the October 17 incident, Janneh had repeatedly told McGouff to "show" Janneh "her moves." [5]  McGouff did not report this conduct because she thought Janneh was joking and, instead, simply ignored his statements.

 Janneh submitted a statement in which he asserted:

> On October 17, 2004, I was riding on the elevator with other employees during the end of the shift [] when me and Molly started playing around as we normally do. I did pull her sweatshirt and said to her show me your best move.  I did not push Molly at all as the allegations are false, untrue, and incorrect, as it is a pretext of conspiracy.

Larkin sent the statements to Regal's Human Resources Department and he was advised by his district manager, Tom Harrigan, that Janneh should be suspended pending an investigation by the Human Resource Department.  Janneh was suspended and Regal concluded its investigation in December 2004,[6] finding that Janneh had exhibited inappropriate workplace behavior. Janneh was returned to work with a Step Two written warning.

### 3.    Failure to "Call In"

In March 2005, Janneh received a Step Three written warning when he failed to show up for his shift and did not call in to report that he would be absent.  Janneh

---

[5]Lukasik reported that:

For the past few weeks Dou Dou has been chasing Molly around and pushing her around and touching her.  He tells her to "show me your moves" all the time. Last week, I think Sunday, Dou Dou said to Molly multiple times to "show me your moves baby," and kept repeatedly asking her to "show him her moves" all day.  I've seen him touch her on multiple occasions and push her.

[6]Defendant asserts in its memorandum of law that Janneh was suspended without pay in accordance with Regal's polices.  Defendant further contends that Regal agreed not to contest Janneh's claim for unemployment during the suspension.

admitted that he did not "call in" as required by Regal's policy.  Janneh was not suspended as a result of this incident.

### c.   Denial of Promotions

Janneh claims that, because of considerations of his race, national origin, or age, he was denied promotions to various assistant manager positions at several Regal theaters.

### 1.   Binghamton Theater

Janneh asserts that he was unlawfully denied a promotion to the position of assistant manager at Regal's Binghamton theater.  However, there is no dispute that all employees holding this title at the Binghamton theater while Plaintiff worked for Regal did so either because of title changes instituted when Regal purchased the theater in March 2003 (denominating all projectionists and employees with supervisory capacity as assistant managers), or because the individuals held the assistant manager's title before March 2003. There is also no dispute that Regal did not solicit applications for the position of assistant manager at the Binghamton theater from March 2003 until Plaintiff's employment with Regal ceased.

### 2.   Crossgates Mall Theater

In November 2003, Regal's Crossgates Mall theater in Albany, New York posted an advertisement for an assistant manager.  Janneh applied for the position.  The Crossgates Mall theater is a high volume theater and the theater manager, Ed Flynn, wanted to hire someone with prior management experience.  Janneh did not have prior

8

management experience.[7]  Flynn hired another candidate with more experience than Janneh.  Flynn attests that his decision was not based on Janneh's race, age or national origin, but rather on the qualifications of the candidates.

### 3. Ithaca Theater

In July 2004, Regal's Ithaca, New York theater advertised an opening for the position of assistant manager. The advertisement stated that all applications must be received by August 9, 2004.  Janneh faxed his application on August 20, 2004, two weeks after the deadline.   Warren Wells, the Ithaca theater manager, attests that the decision not to consider Janneh for the position was not based on his race, age, or national origin but because his application was not received by the deadline.

### 4. Arnot Ogden Mall Theater

In April 2005, Regal's Arnot Ogden Mall theater in Horseheads, New York advertised for the position of assistant manager.  Janneh applied for the position.  Chad Miller, the theater manager, called Janneh repeatedly for an interview but Janneh did not initially respond.  Miller also e-mailed Janneh but did not receive a response.  When Miller did reach Janneh, Janneh said that the times Miller had available for interviews were "inconvenient" for him.  Miller eventually scheduled an interview for April 12, 2005.  Janneh called the day before the interview and cancelled it.  Miller was able to interview Janneh on April 26, 2005 but he was not hired for the position.

 Miller attests that the reason he did not hire Janneh was because of his lack of supervisory or management experience, his Third Step Written Warning, and because Janneh's behavior during the interview process made Miller believe Janneh was not truly

---

[7]It is undisputed that Janneh never held a managerial position.

interested in the position.  Janneh claims that was told he was not given the promotion because he had been previously suspended by the company.

### 5.   St. Augustine Theater

In March 2005, Janneh claims that he applied to Regal's St. Augustine, Florida theater for the position of assistant theater manager.  The job posting for the St. Augustine position required prior supervisory experience.  Janneh did not have prior supervisory experience and he did not indicate any prior supervisory experience in his fax cover sheet. The theater manager, Bradford Joye, received nine applications for the position. Three of the applications were from St. Augustine employees.  Joye promoted the three internal candidates.  He attests that he based his promotion decisions on the hired individuals' strong work records and their lack of disciplinary history.  He further attests that his promotion decisions were based on who he considered the best candidates for the positions, and that he did not consider race, national origin, or age in making the decisions.

### 6.   Hunt Valley Theater

Janneh alleges that he applied for the position of assistant manager at Regal's Hunt Valley, Maryland theater in May 2005.  No record of Janneh's application was found and Janneh produced only a fax cover sheet without an application.  Further, the advertisement for the position at the Hunt Valley theater stated that prior supervisory experience was required.  As indicated above, Janneh did not have prior supervisor experience. Two individuals were hired for the assistant manager positions around the time of Janneh's alleged application.  Katherine Filbert was rehired on June 8, 2005. Filbert was previously a manager at another Regal theater.  Douglas Whitmore, who was

already an assistant manager at another Regal theater, transferred to the Hunt Valley

Theater on July 20, 2005.

### 7.    Bellingham Theater

Janneh responded to an advertisement for the position of assistant manager at

Regal's Bellingham, Massachusetts theater in 2005.  The advertisement listed "prior

supervisory experience" as a qualification for the position.  The Bellingham theater hired

two assistant managers.  Christopher Kelley, the theater manager, attests that he made

his hiring decisions based on who he felt were the best candidates for the positions, and

that he did not consider race, age, or national origin in making the decisions.  One of the

individuals hired already held the assistant manager's position at another Regal theater.

The other individual was already employed at the Bellingham Theater and was promoted

because of his work record and experience.

As to all of the non-promotion claims, Janneh bases his race discrimination

claims on the fact that he is black; he bases his national origin discrimination claims on the

fact that he is a "black African and [he] belong[s] to the Mandingo tribe;" and he bases his

age discrimination claims on the fact that he is over 40 years of age.  Janneh admits that

he never heard anyone tell him, suggest to him, or tell anyone else that he was not being

promoted because of his race, national origin, or age.  However, Plaintiff submits

"statistical evidence" that he contends establishes that considerations of his race or

national origin were involved in these non-promotion decisions.  In this regard, Janneh

submits a series of documents which are each entitled "EEO-1 Headcount Summary,

Regal Cinemas, Inc." Plf. Cross-Mot., Ex. Part 5, [dkt. # 67-11].  The documents indicate

the number of minority individuals in various positions with Regal at various locations

"effective 12/31/2005."[8]   One document, which appears to be for all employees in Regal's

workforce, indicates under the job category "First/Mid-Level Officials and Managers," that

there were 5,631 employees in the category.  Of that number, 1,413 employees, or 25% of

the employees in this category, were listed under a classification other than "white."  The

same document indicates that of Regal's total workforce (24,780 employees), 8,163

employees, or approximately 33% of the workforce, were listed under a classification other

than "white."

Plaintiff also provides similar Headcount Summary documents which appear to

be for individual theaters.  Some are identified by the location of the theater, others are

located only by number.[9]   For example, a document indicating that it is a 12/31/2005

EEO-1 Headcount Summary for "work location: 1727-1737 Crossgates Mall 18" indicates

that of the 14 First/Mid-Level Officials and Managers at this theater,  2 (or 14 %) were

black.  The 12/31/2005 EEO-1 Headcount Summary for the St. Augustine theater

indicates 5 employees in the First/Mid-Level Officials and Managers category with no

minority employees in this category; the document for the Hunt Valley Mall theater

indicates 14 First/Mid-Level Officials and Managers, 4 of whom (or 28%) were black; and

the Bellingham theater document indicates 15 First/Mid-Level Officials and Managers, 14

of whom were white and 1 listed as falling in "two or more" classifications.

### d.   Termination

Beginning on May 28, 2005, Janneh began calling in sick for his scheduled work

---

[8]Plaintiff also provides similar documents for 12/31/2007 which cover a period of time when Plaintiff was not employed by Regal.

[9]It does not appear that Plaintiff provided the EEO-1 Headcount Summary for all of the theaters to which he applied, or, if the documents were provided, they were not identified with sufficient clarity to allow the Court to determine the theater to which the documents applied.

shifts.  On June 17, 2005, Janneh's wife brought in and gave to Eric Larkin, the theater

manager, a doctor's note dated June 10, 2005.  The note indicated that Janneh had been

out of work for "muscle pain," could not work, and would be reevaluated on June 14, 2005.

Larkin spoke with one of the assistant managers, Paul Moulton, who told him that Janneh

had called and told Moulton that he (Janneh) would not be in for his three shifts that week

(June 16, 17 and 18).

On June 21, 2005, Larkin contacted Regal's Human Resources Department

about the situation and forwarded the doctor's note.  Because Janneh was out of work for

a medical reason, Jean Fox, Regal's Benefits Manager, proceeded to determine if Janneh

was eligible for leave under the Family and Medical Leave Act (FMLA).  Fox concluded

that Janneh was not eligible for FMLA leave because he had not worked 1,250 hours in

the preceding year.  Fox sent Janneh a letter indicating that he was not eligible for a FMLA

leave and, because he was medically unable to return to work at that time, she deemed

him to have voluntarily resigned.  The letter further indicated that Janneh would be eligible

for rehire once he was able to return to work.  Fox attests that at the time she processed

this termination, she had never met Janneh, had no prior personal communication with

him, and did not know Janneh's race or national origin.

After receiving the letter, Janneh called Fox and told her that he was confused

because he had not asked for a leave of absence.  Fox explained that she was obligated

by law to determine if Janneh was eligible for FMLA leave and, because he was not, she

deemed him to have resigned because he was unable to return to work. She explained

that he would be eligible for rehire as soon as his medical condition "cleared up."  Fox

never received any indication from Janneh or his doctors that he was able to return to

13

work.

In July 2005, Janneh was diagnosed with inflammatory myopathy.  He was an inpatient at Strong Memorial Hospital from July 2005 through October 7, 2005; an inpatient at Binghamton General Hospital from October 7, 2005 through November 14, 2005; and an inpatient at the Vestal Nursing Center from November 14, 2005 through December 16, 2005.  At the time of Janneh's New York State Division of Human Rights hearing held on November 7, 2007, he was not capable of returning to work at Regal and had not asked his physician to clear him to return to work.  There is no dispute that from June 2005 until his deposition on July 10, 2008, Janneh had not been cleared by his doctor  to return to work, he had never reapplied to work at Regal, and he is currently disabled from employment.[10]

### d.  Procedural History

On November 8, 2004, Janneh filed a complaint of discrimination with the New York State Division of Human Rights (DHR) alleging that he was wrongfully suspended by Regal and that Regal failed to promote him because of his race, national origin and/or age.  On October 16, 2006, the DHR dismissed Janneh's claim finding "no probable cause" to believe discrimination had occurred.

On July 18, 2005,  Janneh filed a second complaint with the DHR alleging that he was wrongfully terminated on the basis of his race, age, and/or disability.  With regard to the claims in the second complaint, a hearing was held on November 7 and 8, 2007.  At the hearing, Janneh was represented by private counsel.  Janneh testified on his own

---

[10]Defendant notes that after being terminated, Janneh received social security disability benefits and now earns more in social security disability benefits than he earned while working for Regal.

behalf.  Eric Larkin, the general manager of the Binghamton Regal, and Jean Fox from Regal's Benefits Department, testified on behalf of Regal.  Following the hearing, the Administrative Law Judge issued a proposed decision dismissing Janneh's claims in their entirety. The ALJ specifically held that Janneh failed to sustain his claim for discriminatory termination, and that Regal articulated a legitimate business reason for terminating Janneh's employment.

On March 25, 2008, the DHR issued a final determination on Janneh's administrative complaint. The DHR's final determination affirmed the decision of the ALJ dismissing the complaint on all issues except for disability, finding that Janneh had established an unlawful discriminatory practice because Regal had failed to engage in the "interactive process" in connection with Janneh's disability claim.

Regal then commenced a proceeding pursuant to New York Executive Law §298 and CPLR Article 78 challenging that portion of the DHR decision that held that Regal had engaged in a discriminatory disability practice. Although the proceeding was pending before the New York State Supreme Court, Appellate Division, Third Department, when Regal filed its Rule 12(b) motion in this Court,[11] the matter has now been decided in Regal's favor.  See Regal Entertainment Group v. New York State Div. of Human Rights, 61 A.D.3d 1102, 1104 (3rd Dept. 2009).[12]

Janneh commenced this action on January 22, 2007.  By Decision and Order dated August 4, 2007, the Court dismissed a number of Janneh's claims. Dec. & Ord., dkt.

---

[11]Resulting in the dismissal "without prejudice to refiling following the receipt of a right-to-sue letter" of Plaintiff's Title VII, ADEA, and ADA retaliatory and discriminatory discharge claims.  Janneh has not filed an amended complaint, and those claims are not before the Court at this time.

[12](Annulling the DHR's decision and dismissing the petition because "Janneh failed to demonstrate a *prima facie* case of discrimination against petitioner. . . .")

# 36.  Remaining are: (a) Janneh's claims under Title VII  of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"),  and the Age Discrimination in

Employment Act,  29 U.S.C. §§ 621 *et seq.* ("ADEA"),  alleging that he was discriminated

against on the basis of race, national origin, and age when he was disciplined at work; (b)

Janneh's claims under Title VII and the ADEA  alleging that he was discriminated against

on the basis of race, national origin, and age when Regal failed to promote him to

assistant manager; and (c) Janneh's claim under 42 U.S.C. § 1981 for discriminatory

discharge on the basis of race.

## IV.      DISCUSSION

### a.   Race, National Origin, and Age Claims Generally

Plaintiff's race, national origin, and age disparate treatment claims, whether

brought pursuant to Title VII, the ADEA, or Section 1981, are analyzed under the burden-

shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct 1817, 36

L .Ed.2d 668 (1973). See Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008)(Title

VII); Dorfman v. Doar Communications, Inc., 314 Fed. Appx. 389, 2009 WL 648524 (2d

Cir.  March 12, 2009)(ADEA); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d

Cir.1997)(Section 1981).  This first requires the plaintiff to establish a *prima facie* case of

discrimination by producing "evidence that raises a reasonable inference that the action

taken by an employer was based on an impermissible factor." Holcomb, 521 F.3d at 138

(internal quotation marks and citation omitted).  The plaintiff's burden of establishing a

*prima facie* case is *de minimis.* Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.

2008).

> If the plaintiff establishes a *prima facie* case of discrimination, the
> burden shifts to the defendant to articulate "some legitimate,

16

non-discriminatory reason" for its action. If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of ... discrimination. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

Holcomb, 521 F.3d at 138 (internal quotation marks and citations omitted).

### b. Workplace Discipline

#### 1. Religious Slur

Janneh alleges that, following a customer's complaint that he called the customer a "f * * king jew," he was investigated because of his race, national origin and age. Janneh fails to present sufficient evidence to establish a *prima facie* case of discrimination relative to this incident.

To present a *prima facie* case of discrimination, Plaintiff must prove, by a preponderance of the evidence, "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Holcomb, 521 F.3d at 138. Plaintiff fails to satisfy the third element of the *prima facie* case because he fails to present evidence that he suffered a material advise change in his working conditions from the investigation into his alleged religious slur. See Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004).[13] During the employer's investigation, Plaintiff was required to give a statement but he was not suspended and he worked his regular shifts and received his regular pay.

---

[13] ("[t]o be materially adverse, ... [the] change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities' ")

The inconvenience Plaintiff might have experienced during the investigation did not "create[] a materially significant disadvantage in . . . [his] working conditions" sufficient to establish an adverse employment action.  Beyer, 524 F.3d at 164; see Babcock v. New York State Office of Mental Health, 2009 WL 1598796, at * 4 (S.D.N.Y. June 08, 2009);[14] see also Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006).[15]

Further, Janneh has presented insufficient evidence to satisfy the fourth element of a *prima facie* case on this claim.  "A plaintiff may [establish the fourth element of his *prima facie* case] by 'showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group.'" Babcock, 2009 WL 1598796, at * 4 (quoting Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)).  Plaintiff conceded during his deposition that if any employee had been accused of making a religious slur to a customer, Regal would be justified in conducting an investigation into the allegation. Plaintiff has failed to provide sufficient evidence from which a reasonable fact finder could conclude that Defendant's investigation was motivated by race, national origin, or age.  The claims in this regard are dismissed.

### 2.    McGouff Incident

Next, Plaintiff contends that he was discriminated against on the basis of race, national origin, and age when he was suspended for pushing his co-worker, Ms. McGouff, and when he was issued a step-two written warning for this incident.  Plaintiff fails to

---

[14]("Where the complained-of action causes 'mere inconvenience,' it does not constitute an adverse employment action. Moreover, Babcock must proffer objective indicia of material disadvantage. He cannot show that he suffered an adverse employment action merely by pointing to his subjective, personal disappointment.")(citations, interior quotation marks and brackets omitted).

[15](even administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action).

present sufficient evidence to establish a *prima facie* case of discrimination relative to this incident.

The uncontested facts reveal that Plaintiff engaged in some sort of physical interaction with his co-employee.  While Plaintiff perceived it a harmless horseplay, McGouff and the other employees that witnessed the event perceived it as an unwelcome physical altercation. The employer's policies called for a suspension pending the investigation into such allegations, and for discipline up to and including dismissal if the allegations are sustained.  The Court does not serve as a super personnel department reviewing disciplinary decisions, see Coleman v. Prudential, 975 F. Supp. 234, 239 (W.D.N.Y. 1997),[16] and employer decisions consistent with established policies, without more, are generally insufficient to satisfy the third element of the *prima facie* case. "[A]n employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." Joseph,  465 F.3d at 91.[17]  However, viewing the evidence in the light most favorable to Plaintiff, a fact finder could conclude that the length of Janneh's suspension, or the nature of the discipline imposed, was unreasonable under the circumstances.

---

[16]("The laws prohibiting discrimination in employment were "not intended to transform the courts into personnel managers." Thornbrough v. Columbus and Greenville R.R. Co., 760 F.2d 633, 647 (5th Cir.1985). The Second Circuit has reminded district courts that they do not have a "roving commission to review business judgments," Montana v. First Fed. Savings and Loan Ass'n of Rochester, 869 F.2d 100, 106 (2d Cir.1989) (quoting Graefenhain v. Pabst Brewing Co., 827 F.2d 13, 21 n. 8 (7th Cir.1987)), and that they "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process."[Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)]).

[17](citing Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001)(The "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from [an employer's] disciplinary procedures.")).

Nevertheless, Plaintiff fails to satisfy the fourth element of the *prima facie* case on the claims related to this incident because he fails to present sufficient objective evidence from which a reasonable fact finder could conclude that the employer was motivated by considerations of Plaintiff's race, national origin, or age when it suspended and disciplined Plaintiff. <u>See</u> Valenzuela v. River Bay Corp., 2007 WL 2435161, at * 7 (S.D.N.Y. Aug. 24, 2007).[18]  While Plaintiff admits that he pulled McGouff's hood, he contends that he did so out of jest and argues that the employees who gave statements against him did so as part of a conspiracy.   Yet, Janneh's contention of a conspiracy is wholly conclusory, and he admits that he never heard any statements that his suspension or discipline were imposed upon considerations of improper factors.  Further, he could not point to any other employee who was falsely accused of wrongdoing in the work place or who was treated differently than he was treated in a similar situation.  He has provided no evidence beyond his own supposition that the *employer's* conduct in this matter was based upon considerations of his race, national origin, or age.

Assuming, *arguendo*, that Plaintiff presents a *prima facie* case of discrimination, Plaintiff fails to present sufficient evidence from which a reasonable fact finder could conclude that either the suspension or the discipline imposed were motivated by the employer's consideration of his race, national origin, or his age.  As noted, Regal's employment policies specifically prohibit verbal or physical altercations and horseplay between employees; provide for the temporary suspension of an employee charged with

---

[18]("With respect to the fourth element of the *prima facie* case, a plaintiff may meet his burden of establishing an inference of discriminatory intent through a number of means, including the employer's criticism of the plaintiff's performance in ethically degrading terms; or its invidious comments about others in the employee's protected ground; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action]." )(citing <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 468 (2d Cir. 2001)).

such conduct pending an investigation; and call for discipline up to and including discharge for altercations in the workplace.  Whether the length of the suspension or the level of discipline imposed were reasonable is immaterial unless there is some indication that they were imposed because of an improper discriminatory reason. See Lawrence v. Thomson Learning Inc., 2007 WL 1593270, at * 30 (N.D.N.Y. June 1, 2007).[19]  Plaintiff has failed to present sufficient evidence from which a reasonable fact finder could conclude that they were, and his own conclusions that he was discriminated against because of his race, national origin, or age are insufficient to withstand summary judgment. See Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999);[20] id. at 448;[21] Richardson v. N.Y. Dep't. of Correctional Serv., 180 F.3d 426, 447 (2d Cir. 1999).[22] Therefore, the claims arising from the McGouff incident are dismissed.

### 3.    Step Three Written Warning

There is no dispute that Plaintiff was issued a step three written warning because he failed to "call in" to report his absence from work in March of 2005 as the employer's

---

[19] ("This Court's only concern is not whether the [suspension and discipline were] for an inexpedient reason, but whether [they were] based on an improper discriminatory reason." )

[20] (Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination.")

[21] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.   This undertaking is not one of guesswork or theorization.   After all, an inference is not a suspicion or a guess.   It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

[22] (affirming summary judgment for employer where employee offered only her own general claim of discrimination to show that the employer's legitimate reason for terminating her was pretextual).

policies required him to do.  He has presented no evidence that the discipline imposed

was motivated by considerations of his race, national origin, or age.  Therefore, the

discrimination claims arising from this incident must be dismissed.

### c.   Failure to Promote Claims

Plaintiff contends that he was denied promotion to several assistant manager

positions because of considerations of his race, national origin, or age.  In order to

establish a *prima facie* case of discriminatory failure to promote, Plaintiff must establish

that: (1) he is a member of a protected class; (2) he applied for an available position for

which he was qualified; (3) he was denied the promotion; and (4) the denial occurred

under circumstances giving rise to an inference of discrimination. Howley v. Town of

Stratford, 217 F.3d 141, 150 (2d Cir. 2000) (citing McDonnell-Douglas, 411 U.S. at 802).

### 1.    Binghamton Theater

Plaintiff contends that he was discriminated against by Regal in March of 2003

when Regal took over Hoyts Cinemas, automatically deemed certain employees assistant

managers, but did not deem him an assistant manager. The claims in this regard are

untimely because Plaintiff did not file a complaint of discrimination on this basis with the

New York State Division of Human Rights or the Equal Employment Opportunity

Commission within 300 days of the date that the automatic promotions took place. See 42

U.S.C. § 2000e-5; 29 U.S.C. § 626(d); Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d

Cir. 2004);[23] see also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122

---

[23](Promotion denials are viewed as discrete acts of discrimination and a New York plaintiff may only sue for events occurring 300 days before the administrative filing."The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period.")

S. Ct. 2061, 2072 (2002).[24]

Assuming, *arguendo*, that these claims were timely interposed, Plaintiff fails to present sufficient evidence establishing the elements of a *prima facie* case of race, national origin, or age discrimination relative to the Binghamton theater.  Plaintiff has not provided sufficient evidence from which a reasonable fact finder could conclude that there was an available assistant manager position in Binghamton, that Janneh was qualified for such a position, or that he was rejected under circumstances given rise to an inference of discrimination. See Brown,163 F.3d at 710.[25]  While Plaintiff alleges that he repeatedly asked his supervisor about a promotion, there is no dispute that the employer never solicited applications for the position of assistant manager at the Binghamton theater during Plaintiff's tenure.  "[A] *prima facie* case cannot be established merely with evidence that a plaintiff generally requested promotion consideration." Petrosino, 385 F.3d at 226-27.

### 2.    Non-promotion Due to Age

Further, Plaintiff has failed to present any evidence upon which a reasonable fact finder could conclude that any of the non-promotion decisions were motivated by considerations of Plaintiff's age.  Accordingly, all such age-based claims must be dismissed.

---

[24](Failure to promote claims are discrete acts and, therefore, an administrative claim must be filed within 180 or 300 days of the complained-of-act).

[25](To establish a failure to promote claim a plaintiff must demonstrate that he "applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.").

23

### 3.      All Non-Promotion Decisions - Race or National Origin

Assuming without deciding that Plaintiff satisfies a *prima facie* case of race or

national origin discrimination as to all non-promotion decisions because of the "statistical

evidence" of under-representation of minorities in the entry level management positions,

see Pleau v. Centrix, Inc., 2009 WL 2603396, at *2 (2d Cir. Aug. 26, 2009),[26] but see

Bridgeport Guardians, Inc. v. City of Bridgeport, 933 F. 2d 1140, 1147 (2d Cir. 1991),[27]

cert. denied, 502 U.S. 924 (1991), the employer has articulated a non-discriminatory

reason for each non-promotion decision.  That is, the employer has articulated that it hired

the most qualified individual for each opening that Janneh timely applied for, and that all

promotion decisions were made without consideration of the race, national origin, or age

of the candidates.  This satisfies Defendant's burden at the second step of the McDonnell

Douglas test and shifts the burden back to Plaintiff.  St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 509 (1993).

On the third step of the McDonnell Douglas test, Plaintiff must demonstrate

either that the proffered reason was not the true reason for the employment decision or

that considerations of race or national origin motivated the employment decision in issue.

See James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000); Aksamit V. 772

Park Avenue Corp., 2003 WL 22283813, *5 (S.D.N.Y. Oct. 2, 2003).  In determining

whether Plaintiff satisfies this ultimate burden, the Court must examine the entire record

---

[26]("Statistics may provide circumstantial evidence of age discrimination" in disparate treatment cases.).

[27]("To establish a *prima facie* case [of employment discrimination], statistical disparities 'must be sufficiently substantial that they raise . . . an inference of causation.'") (quoting Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 995 (1988)).

and apply "a case-by-case approach." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir.

2000). "To get to the jury, '[i]t is not enough ... to disbelieve the employer; the fact finder

must [also] believe the plaintiff's explanation of intentional discrimination.'" Weinstock v.

Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000)(quoting St. Mary's, 509 U.S. at 519).

On this ultimate issue, Plaintiff's evidence of discriminatory motive is scarce at best.

While evidence supporting a *prima facie* case can be considered in determining

whether an employee satisfies his ultimate burden of establishing discrimination, Reeves

v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000), this evidence, in this

case, is insufficient to withstand summary judgment. See James, 233 F.3d at 154;

McCarthy v. New York Tech. College, 202 F.3d 161, 166 (2d Cir. 2000).  Every job Plaintiff

applied for required prior supervisory experience which, the evidence indicates, Plaintiff

did not possess.  Further,  the uncontradicted evidence demonstrates that every position

was filled by an applicant with greater qualifications than Plaintiff.  "The evidence that

defendant filled these [positions] with [non-minority] applicants who were more qualified

than plaintiff rebuts any presumption of discrimination."  Kravitz v. New York City Transit

Auth., 2001 WL 1646513, at * 8 (E.D.N.Y. Dec. 18, 2001)) (citing Holt v. KMI-Continental,

Inc. 95 F.3d 123, 130 (2d. Cir. 1996)).

Other than Plaintiff's subjective belief that considerations of race or national

origin played a role in his non-promotion, he is left with little more than the fact that

minorities were under-represented in the several small statistical groupings of the

individual theaters to which he applied.  Although "[s]tatistics may provide circumstantial

evidence of [] discrimination" in disparate treatment cases, the disparate treatment of

certain classes within a small group is insufficient, without more, to establish actionable

25

discriminatory animus.  Pleau v. Centrix, Inc., 2009 WL 2603396, at *2 (2d Cir. Aug. 26, 2009); see also Mayor of City of Philadelphia v. Educational Equality League, 415 U.S. 605, 621 (1974);[28] E.E.O.C. v. Joint Apprenticeship Committee, 186 F.3d 110 (2d Cir. 1999);[29] Coleman, 975 F. Supp. at 240.[30]  There is no evidence presented as to how many blacks or other minorities applied for the assistant manager positions that Plaintiff applied for (or for any of the assistant manager positions with Regal theaters in 2005), and the under representation of blacks and minorities in these positions (or in Regal's total workforce) does not provide sufficient evidence from which a reasonable fact finder could conclude that considerations of Plaintiff's race or national origin motivated the non-promotion decisions in issue. Baron v. New York City Dept. of Educ., 2009 WL 1938975, at * 6 (E.D.N.Y. July 07, 2009).[31]

In the end, Plaintiff relies upon mere surmise and speculation when he concludes that the decisions not to hire him into the assistant manager positions were motivated by illegal animus.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations, surmise, speculation, or denials of its pleading, but must set forth specific facts showing the existence of a genuine issue for trial. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 256-57; see Byrnie v. Town of Cromwell,

---

[28] (statistics regarding racial composition of thirteen-member school board nominating panel were meaningless).

[29] (statistical evidence must reflect a disparity so great that it cannot be accounted for by chance).

[30] (statistical evidence of age and racial discrimination was not probative where the small sample size, 19 employees, rendered the statistics practically meaningless).

[31] ("Statistics alone are insufficient in a disparate-treatment claim because an individual plaintiff must prove that he or she in particular has been discriminated against.")( quoting Drake v. Delta Air Lines, Inc., 2005 WL 1743816, at *6 (E.D.N.Y.  July 21, 2005), aff'd, 216 Fed. App'x 95 (2d Cir.2007)).

Bd. of Educ., 243 F.3d 93, 100 (2d Cir. 2001);[32] Scotto v. Almenas, 143 F.3d 105, 114 (2d

Cir. 1998).[33]   Because Plaintiff fails to present sufficient evidence demonstrating that

Defendant's "proffered explanation is unworthy of credence," Plaintiff's claims of

discrimination arising from Defendant's failure to promote him to assistant manager are

dismissed.  Lawrence v. Thomas Learning, Inc., 2007 WL 1593270, at * 21 (N.D.N.Y.

June 1, 2007) ( (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101

S. Ct. 1089, 67 L. Ed.2d 207 (1981)).

### d.   Disparate Impact Theory

To the extent Plaintiff bases his Title VII claims on a disparate impact theory, the

claims must be dismissed. "[D]isparate impact claims are concerned with whether

employment policies or practices that are neutral on their face and were not intended to

discriminate have nevertheless had a disparate effect on the protected group." Robinson

v. Metro-North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001).  To make out a

*prima case* of disparate impact discrimination, "a plaintiff must (1) identify a policy or

practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship

between the two." Id.; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.

Ct. 2162, 2171 (2007);[34] Byrnie, 243 F.3d at 111.[35]  "Simply gesturing towards the hiring

---

[32] ("Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor.").

[33] (The "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" to withstand summary judgment).

[34] ("A disparate-treatment claim comprises two elements: an employment practice and discriminatory intent.").

[35] ("A plaintiff makes out a *prima facie* case for a disparate impact claim by showing 'that a facially neutral employment policy or practice has a significant disparate impact.'")(quoting Brown v. Coach Stores,

(continued...)

process as a whole will not satisfy the requirement that the plaintiff identify a 'specific employment practice' that is the cause of the statistical disparities. <u>Byrnie</u>, 243 F.3d at 111 (quoting <u>Wards Cove Packing Co. v. Atonio</u>, 490 U.S. 642, 656 (1989)). "Allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient." <u>Brown</u>, 163 F.3d at 712.

Plaintiff has done nothing more than point to the racial imbalance in Regal's work force and then, conclude that there must be a policy or practice that has been the causative factor. Such surmise is insufficient and reveals that the disparate impact theory is simply a recasting of his disparate treatment theory.  Any non-promotion claim based upon a disparate impact theory is dismissed.

<u>**e.**</u>   <u>**Section 1981 Discriminatory Termination**</u>

Janneh claims that he was discharged because of his race.  Regal maintains that Janneh was not discharged but rather was deemed to have voluntarily resigned because he was unable to work.

The uncontradicted evidence reveals that Janneh had not been cleared by his doctor to return to work from June 2005 until his deposition in this case on July 10, 2008, he had never reapplied to work at Regal, and he is currently disabled from employment. Accordingly, Janneh cannot satisfy the second element of a *prima facie* case because he cannot establish that he was capable of fulfilling the most essential function of his job, which is to come to work. <u>See</u> <u>Windham v. Time Warner, Inc.</u>, 275 F.3d 179, 187 (2d Cir.

---

[35](...continued)
<u>Inc.</u>, 163 F.3d 706, 712 (2d Cir. 1998)).

2001);[36] see also Corr v. MTA Long Is. Bus, 27 F. Supp. 2d 359, 366-367 (E.D.N.Y. 1998).[37]

Furthermore, Plaintiff has failed to present sufficient evidence to support the fourth element of the *prima facie* case which requires evidence that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his race. Regal has submitted uncontradicted evidence that other employees, including white employees, were terminated when they did not qualify for FMLA and were unable to work. Those employees were rehired when they were medically cleared to return to work. The undisputed evidence also reveals that Jean Fox, Regal's benefits manager who processed Plaintiff's termination, had never met Janneh, had no prior personal communication with him, and did not know Janneh's race or national origin before she processed his termination.

Plaintiff has presented no evidence upon which to draw the inference that consideration of his race played any role in the employer's termination decision. Accordingly, any discriminatory discharge claim must be dismissed for failure to establish a *prima facie* case of discrimination.

### f.   Plaintiff's Cross-Motion

For the reasons set forth above, Plaintiff's cross-motion for summary judgment is denied.

---

[36] ("In order to establish a prima facie case of discriminatory discharge in violation of Title VII or Section 1981, a plaintiff must show (1) that he belongs to a protected class, (2) that he was performing his duties satisfactorily, (3) that he was discharged, and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class.")

[37] ("[A]n employee who does not come to work cannot perform any of his job functions, essential or otherwise." )(citation omitted)

**g.   Appointment of Counsel**

Plaintiff's renewed motion for  appointment of counsel is denied as moot.  <u>See</u>

Plaintiff's Motion to Appoint Counsel [dkt. # 67].

**V.        CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment [dkt.

# 58] is **GRANTED** and Plaintiff's action is **DISMISSED** in its entirety. Plaintiff's cross-

motion for summary judgment [dkt. # 67] is **DENIED**.  Plaintiff's renewed motion for

appointment of counsel [dkt. # 66] is **DENIED AS MOOT**.

 Dated: September 8, 2009

Thomas J. McAvoy
Senior, U.S. District Judge

30